IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

v.                              CRIMINAL ACTION NO. 2:21-cr-00023

MICHAEL ANDREW KING, JR.,

MEMORANDUM OPINION & ORDER

Pending before the court is Defendant Michael King's Motion to Suppress. [ECF No. 29]. The Government has Responded [ECF No. 36] and Defendant has Replied [ECF No. 37]. For the reasons herein, the Motion to Suppress [ECF No. 29] is **DENIED**.

Also pending are several discovery motions filed by Defendant. [ECF Nos. 23, 24, 25, 26, 27, 28]. The Government has filed a Response to these motions [ECF No. 31] and Defendant has replied [ECF No. 37]. Based upon the information contained in the Response and Reply, it appears to the court that the materials requested in ECF Nos. 23, 24, 26, and 27 have been provided to Defendant where they exist, and Defendant has been notified of the material that does not exist. Therefore, I find it appropriate to **DENY** those motions [ECF Nos. 23, 24, 26, 27] **as MOOT**.[1] For the

---

[1] Of course, the Government has a continuing duty to supplement its Discovery Responses should new evidence come to its attention.

reasons herein, ECF No. 25 is **DENIED** and ECF No. 28 is **DENIED in part** and **GRANTED in part**.

I. Background

Defendant is charged with possession with intent to distribute 50 grams or more of methamphetamine and 28 grams or more of cocaine base, otherwise known as "crack cocaine." The drugs in question were found when officers conducted a traffic stop of a person known as "C.H." on February 2, 2019. But Defendant's alleged involvement, and the police investigation into him, began well before the stop.

In 2018 and 2019, the Metropolitan Drug Enforcement Network Team ("MDENT") investigated Defendant in connection with suspected drug trafficking activity in Kanawha County, West Virginia. In January 2019, Defendant allegedly sold methamphetamine or crack cocaine on four separate occasions to an unnamed confidential informant ("the CI") who was working with MDENT. Defendant is not charged in relation to those drug sales. Instead, based in part upon the sales, MDENT Detective P.D. Hodge obtained a search warrant to place a GPS tracking device on Defendant's vehicle, a gray Chevrolet Tahoe, for up to forty-five days.

The warrant was issued on the day of the first sale to the CI, January 4, 2019. However, the parties disagree as to when the GPS device was actually attached to the Tahoe. Defendant alleges the device was attached on January 2, 2019, two days prior to the warrant, because discovery provided by the Government shows GPS data being transmitted from the device beginning that day. The Government argues that the device was not attached to the Tahoe until January 8, 2019, at 1:00 a.m. To

explain the additional data provided to Defendant, the Government says that the device records GPS data regardless of whether it is attached to a target's vehicle. The Government avers that the GPS coordinates recorded prior to January 8, 2019, indicate that the device was in the immediate vicinity of the MDENT office in Dunbar, West Virginia. Though Defendant continues to argue to point, he seemingly concedes in his Reply that the device was not placed on his Tahoe until sometime after the warrant was issued. Specifically, Defendant states the following:

> The GPS data provided in the spreadsheet does not indicate a location the precise time of 0100 a.m. on January 8, 2019 but does provide a location for 2320 p.m. on January 7, 2019 and a location for 0445 on January 8, 2019. The latitude and longitude at these times relate to the same address in Dunbar, West Virginia. A latitude and longitude related to a location in Montgomery, West Virginia *does not appear until January 10, 2019* in the spreadsheet provided.

[ECF No. 38, at 2 (emphasis supplied)].

Defendant lives in Montgomery, West Virginia. Regardless of when the GPS device was attached to Defendant's Tahoe, it remained there throughout January and into early February 2019.

On January 31, 2019, the CI informed Detective Hodge that Defendant would be travelling to Cleveland, Ohio to bring back "stuff," which the CI took to mean drugs. Based on that tip, Detective Hodge monitored the GPS tracking device on Defendant's Tahoe and conducted surveillance on the interstate as Defendant made his way back toward Charleston, West Virginia. Detective Hodge located Defendant's vehicle and followed him on the interstate. During that time, Detective Hodge noticed

that Defendant was traveling in tandem with a Chevrolet Traverse. Detective Hodge ran the Traverse's registration and learned that it was registered to the person known as C.H.

Officers "paced" both Defendant and C.H. as driving ten miles per hour over the speed limit and pulled them both over at separate locations on Interstate 77. Officers searched Defendant's car and found only a small amount of marijuana. Defendant is not charged in relation to his traffic stop. Though I am provided with scant details of the stop of C.H., Defendant alleges officers immediately requested a K-9 unit respond to that stop. According to Defendant, C.H. initially gave consent for officers to search the Traverse but then withdrew consent shortly thereafter. The K-9 unit then responded and indicated the presence of drugs on the right rear passenger door of C.H.'s Traverse. C.H. then told officers that there were narcotics in the vehicle. In the search that followed, officers discovered over 400 grams of methamphetamine and over 80 grams of crack cocaine in a plastic grocery bag near the rear seats.

The Government has charged Defendant with possession with intent to distribute these drugs, and it argues the evidence at trial will show Defendant placed them in the Traverse.

## II. Pending Motions

### A. Motion to Suppress

Defendant moves to suppress all of the evidence obtained during the search of C.H.'s Traverse. Defendant argues the stop of C.H. was unconstitutional and the evidence must therefore be suppressed. Defendant's argument is based on his belief

that the GPS tracker was placed on his Tahoe prior to the warrant being issued. He claims that the GPS tracker was placed illegally, and that, but for the tracker, Officers would not have stopped C.H. or called for a K-9 unit to respond. Therefore, Defendant claims he should have standing to argue for suppression of the evidence obtained during the stop of C.H. because it was fruit of the allegedly unlawful placement of the GPS tracker on his Tahoe.[2]

In support of his motion, Defendant relies primarily on *United States v. Terry*, 909 F.3d 716 (4th Cir. 2018). In *Terry*, MDENT officers placed a GPS tracking device on a vehicle Terry was driving, but did not own, before obtaining a warrant to do so. Using the GPS tracker to follow and monitor the vehicle, officers pulled it over two days later, after the warrant had been issued. At that time, the owner of the vehicle was driving and Terry was a passenger. Officers searched Terry's person and discovered a considerable amount of drugs. The Fourth Circuit ruled that the placement of the GPS tracker prior to a warrant being issued violated Terry's Fourth Amendment rights, and that the evidence found during the search of Terry's person had to be suppressed because it was fruit of that violation. That is to say, the officers would not have been able to follow, pull over, or search Terry had they not illegally placed the GPS tracker on the vehicle he was driving two days earlier.

Defendant suggests *Terry* is instructive here. While that case does have seemingly similar facts, Defendant's argument ignores a basic principle of Fourth

---

[2] I note again, however, that Defendant seems to concede that the GPS tracker was not placed on his Tahoe prior to the warrant being issued. That being the case, there is no constitutional violation to serve as the basis of a motion to suppress. But because Defendant persists in his suppression motion, I consider his arguments here.

5

Amendment jurisprudence—"The Fourth Amendment protects people, not places." *Katz v. United States*, 389 U.S. 347, 351 (1967). Accordingly, Fourth Amendment rights "may not be vicariously asserted." *United States v. Rumley*, 588 F.3d 202, 206, n.2 (4th Cir. 2009) (quoting *Rakas v. Illinois*, 439 U.S. 128 133–34 (1978)). "Suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence." *Alderman v. United States*, 394 U.S. 165, 171–72 (1969). Put the other way, "[a] person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Rakas*, 439 U.S. at 134. Therefore, "[t]here is no necessity to exclude evidence against one defendant in order to protect the rights of another." *Alderman*, 394 U.S. at 174. Rather, the "capacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection . . . has a legitimate expectation of privacy in the invaded place." *Rakas*, 439 U.S. at 143.

Applying this principle here, I **FIND** that Defendant has no standing to assert that C.H.'s Fourth Amendment rights were violated. The Fourth Amendment only protects the victim of the search, and there is no evidence Defendant was the victim of the search of the Traverse, other than by use of the evidence obtained against him. The test of whether Defendant was a victim of the search is whether he had a legitimate expectation of privacy in C.H.'s Traverse. I **FIND** that he did not. There is

no evidence that Defendant owned the Traverse, was a passenger in the Traverse, or regularly used the Traverse. Defendant does not contend otherwise. The only argument Defendant makes to suggest he may have had some minimal privacy interest in the Traverse is that, according to him, C.H. told officers during the stop that Defendant "placed luggage in the back of her vehicle." [ECF No. 38, at 5]. Therefore, Defendant argues, "at the very least, [he] has an expectation of privacy in the luggage placed in C.H.'s vehicle." [ECF No. 38, at 5]. This falls short as well. Defendant does not argue, and there is no evidence to suggest, that the drugs in question were found *in* the luggage. Rather, the evidence before me is only that the drugs were found in a plastic grocery bag near the rear seats.

In any event, I would find that there were sufficient intervening circumstances here to purge any taint if the GPS tracker had been placed illegally and if Defendant was an actual victim of the search. Officers had, at a minimum, independent, reasonable and articulable suspicion to stop C.H. for speeding. Though Defendant argues the officers only followed C.H. because they had placed the tracker on his vehicle, I am unconvinced this amounts to any constitutional violation. Officers were not using the GPS tracker to track C.H., and there is no evidence, nor could I decide here, that C.H. had a reasonable expectation of privacy in Defendant's Tahoe. That officers observed C.H. speeding while investigating Defendant is a matter of chance. More importantly, officers had probable cause to search C.H.'s lawfully stopped Traverse after the K-9 unit indicated the presence of drugs in the vehicle. *United*

*States v. Branch*, 537 F.3d 328, 340 n.2 ("[I]t is well settled that a 'positive alert' from a drug detection dog, in and of itself, provides probable to search a vehicle.").

Because Defendant does not have standing under the Fourth Amendment to assert a violation of C.H.'s constitutional rights and Defendant was not a victim of the search of C.H.'s vehicle, the Motion to Suppress [ECF No. 30] is **DENIED**.

### B. ECF No. 25–Motion for Disclosure of CI File

In this motion, Defendant requests an order requiring the Government to disclose "any and all confidential informant files relied upon by Charleston Metro Police and Kanawha County Sheriff's Department in their investigation" of Defendant. [ECF No. 25, at 1].

#### 1. Legal Standard

In certain instances, the Government is "privilege[d] to withhold from disclosure the identity of persons who furnish information of violations of law to officers." *Roviaro v. United States*, 353 U.S. 53, 58 (1957). However, "[w]here the disclosure of an informer's identity, or the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Id.* at 60–61. Most cases where disclosure is required arise when "the legality of a search without a warrant is [at] issue and the communications of an informer are claimed to establish probable cause," or when the informer "helped to set up the commission of the crime and [] was present at its occurrence." *Id.* (citations omitted).

The Supreme Court of the United States has determined that "no fixed rule with respect to disclosure is justifiable." *Id.* at 62. Instead, the determination of whether disclosure is required must balance "the public interest in protecting the flow of information against the individual's right to prepare his defense." *Id.* In deciding whether to require disclosure, the Supreme Court has directed courts to examine "the particular circumstances of each case, taking into consideration (1) the crime charged, (2) the possible defenses, (3) the possible significance of the informer's testimony, and (4) other relevant factors." *Id.*

Applying this test, the United States Court of Appeals for the Fourth Circuit has held that "an important factor affecting disclosure is the informant's involvement in the criminal acts of the accused." *United States v. Gray*, 47 F.3d 1359, 1365 (4th Cir. 1995). More specifically, the Fourth Circuit has held,

> In delineating the significance of this involvement, . . . the government is privileged to withhold the identity of the informant when the informant was a "mere tipster," or was used only for obtaining a search warrant, but [] failing to disclose the informant's identity more likely amounts to error when the informant was an active participant in the events leading to the arrest of the accused.

*Id.* (citations omitted).

Importantly, "[t]he burden is on the defendant to establish that the *Raviaro* criteria in a particular case counsel in favor of disclosure." *United States v. Blevins*, 960 F.2d 1252, 1258 (4th Cir. 1992).

9

2. Discussion

In his Motion, Defendant makes no attempt to establish the *Raviaro* factors. Instead, Defendant discusses the fact that MDENT detectives relied on information provided by the CI to obtain the GPS tracker warrant and then summarily concludes that the CI "file" is "necessary and material in preparing the defense" in this case. [ECF No. 25, at 2]. The Government responds that the Motion should be denied at this time because the CI was involved primarily in the purchase of drugs that are not charged in this indictment. And in that respect, the CI was "used only for obtaining a search warrant." [ECF No. 31, at 4 (quoting *Gray*, 47 F.3d at 1365)]. The Government further points out that Defendant has not challenged the GPS warrant and that, in relation to the drugs Defendant is charged with possessing, the CI acted only as a tipster who alerted Detective Hodge to Defendant's potential activities. The Government adds that the CI's identity and all necessary *Giglio*[3] materials will be provided to Defendant if and when the Government seeks to call the CI as a witness.

In his Reply, Defendant argues that MDENT "bas[ed] the entire investigation on information obtained from the confidential informant," and the proposition that the Government will disclose the informant's identity only if it seeks to call him or her as a witness "fails to appreciate that the Defendant may [want to] call the confidential informant as a material witness" in his defense. [ECF No. 37, at 4, 5]. Specifically, Defendant argues he will want to examine the CI "to determine whether sufficient grounds existed for the warrant to place the GPS tracker, which lead to the

---

[3] *Giglio v. United States*, 405 U.S. 150 (1972).

stop of C.H. and seizure of illicit drugs." [ECF No. 37, at 5]. And he suggests that the CI's testimony may vary from the information contained in the MDENT Report.

Applying the *Raviaro* factors here, I conclude that the Defendant has not met his burden to establish the necessity of disclosure. While I recognize that the CI had purchased drugs from Defendant, those sales are not part of the indictment. The crime charged here is possession of the drugs found in C.H.'s vehicle. Defendant has made no argument that the CI was present at the time those drugs were found or that the CI was in some way involved with that crime. Therefore, it is unclear what significance the CI's testimony could have for Defendant's defense. In fact, Defendant has not presented any argument as to why or how the CI may help him establish any defense. Moreover, Defendant has not sought to challenge the warrant that allowed MDENT to place the GPS tracker, such that the CI's identity or testimony may be relevant. Though Defendant may be correct that the investigation into him was initiated or was furthered by the CI, the CI acted as nothing more than a "mere tipster" in relation to the crime charged. *Gray*, 47 F.3d at 1365.

The Motion for Disclosure [ECF No. 25] is **DENIED**.

### C. ECF No. 28–Motion for Data/Information from Officers' Cell Phones

Finally, Defendant requests "any and all data and information from the cell phones of officers conducting the traffic stop of C.H. on [or] about February 2, 2019 or [] inspection of the same." [ECF No. 28, at 2]. In support of his Motion, Defendant argues that in the dashboard camera footage of the traffic stop of C.H. "officers can be seen . . . taking photographs and or video of the vehicle with their cell phones." *Id.*

11

at 1. He says that the Government has only provided him with nine photographs but that conversations overheard on the video suggest officers took other photographs and videos at the scene. Finally, Defendant argues that "information and data obtained at the scene appears to be transmitted to other individuals for additional investigation, printing, and analysis." *Id.* In the Motion, Defendant argues he "must have access to the cell phone data and information from these officers' cell phones" in order to properly evaluate his defenses, and "must assure that the information and data has not been manipulated" since it was stored on personal cell phones. *Id.* at 2.

The Government responds in opposition, arguing that Defendant's request is unreasonably broad as it contains "no particularity as to time or substance of data requested." [ECF No. 31, at 5]. Further, the Government argues Defendant "does not explain how additional photos or videos of [C.H.'s] Traverse, even if they existed, would impact his case," nor does he provide any "reason to believe that any manipulation occurred in this case." *Id.* at 6. In his Reply, Defendant notes that the Government has provided fifteen photographs depicting the stop of his vehicle, the stop of C.H.'s vehicle, and the drugs. However, he says that the MDENT report provided by the Government in discovery indicated there are 63 separate items labeled as "Digital Photo." Therefore, Defendant believes there must be at least 48 other photographs in possession or control of the Government that have not been disclosed. Defendant presumes "some of these [additional] photographs show the traffic stop of the Defendant, which would show that the search of the Defendant's vehicle was fruitless." [ECF No. 37, at 8]. Additionally, Defendant argues the

12

Government has not provided any information to authenticate the photos it has provided, such as "the identity of the photographer(s)" or "where or why these photographs were produced." *Id.* at 7.

Pursuant to Federal Rule of Civil Procedure 16(e), "[u]pon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant." In his Motion, Defendant requested "data and information from the cell phones of officers conducting the traffic stop of C.H." or inspection of the same. [ECF No. 28, at 2]. But in his Reply, Defendant seems to request any and all of the additional 48 photographs identified in the MDENT report, regardless of whether they depict the stop of C.H.'s Traverse. Because the burden of production is not cumbersome in either circumstance, I will construe Defendant's request broadly.

At this point, Defendant has not made any showing why he needs access to personally inspect the cell phones of officers at the scene. He has not named officers specifically, nor has he provided sufficient limits on the scope of any requested inspection. In that regard, his Motion [ECF No. 28] is **DENIED in part**. However, given the Government's duty to produce evidence in its custody or control that is relevant to the preparation of a defense, I **ORDER** the Government to disclose any

13

and all photographs and videos related to this case, including the stop of Defendant and the stop of C.H.'s Traverse. The Government should ensure that any photographs or videos taken by officer's cellphones during the traffic stops of Defendant and C.H. are provided to Defendant. I **FIND** that any such photographs or videos are material to the preparation of the defense. If additional photographs or videos, including but not limited to the additional photographs from the MDENT report, do not exist, the Government should provide a thorough explanation of its attempt to locate them and the reasons it was unsuccessful. In this regard, the Motion [ECF No. 28] is **GRANTED in part**. The Government shall make its disclosures as soon as reasonably practicable but no later than **May 14, 2021**.

Though Defendant requests that the Government provide evidence to authenticate its photographs, authentication is a matter for trial. That is, for evidence to be admissible at trial, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). The Government need not authenticate its evidence in discovery. If the Government attempts to introduce evidence at trial without laying the proper foundation, Defendant can object at that time.

## III. Conclusion

For the foregoing reasons, Defendant's Motion to Suppress [ECF No. 29] is **DENIED**. ECF Nos. 23, 24, 26, 27 are **DENIED as MOOT**. ECF No. 25 is **DENIED,** and ECF No. 28 is **DENIED in part** and **GRANTED in part**. The court **DIRECTS** the Clerk to send a copy of this Order to the defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER: May 4, 2021

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE